```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
ON TIME STAFFING, LLC and ON TIME   :
INDUSTRIAL STAFFING, INC.,          :
                                    :
               Petitioners,         :
                                    :
          -v-                       :
                                    :    10 Civ. 9583 (JSR)
NATIONAL UNION FIRE INSURANCE       :
COMPANY OF PITTSBURGH, PA,          :    OPINION AND ORDER
                                    :
               Respondent.          :
------------------------------------ x
```



JED S. RAKOFF, U.S.D.J.

On December 23, 2010, petitioners On Time Staffing, LLC and On Time Industrial Staffing, Inc. (collectively "On Time") brought a petition to vacate an interim arbitration award requiring the posting of pre-hearing security that was rendered against them in an underlying arbitration between On Time and respondent National Union Fire Insurance Company of Pittsburgh, PA ("National Union"). After receiving full briefing and hearing oral argument, the Court, by Order dated February 10, 2011, denied the petition in its entirety. This Opinion And Order sets forth the reasons for that ruling and directs the entry of final judgment.

The pertinent facts are as follows. From June 2006 to June 2008, pursuant to a Payment Agreement dated June 2, 2006, National Union provided On Time with retrospectively rated workers compensation insurance. See Affirmation of Michael S. Chung,

dated December 23, 2010 ("Chung Aff.") at Ex. F. ("Payment Agreement"). The Payment Agreement states that, in the event that National Union determines On Time has defaulted on its payment obligations, On Time must submit "written particulars" detailing any payment disputes, and pay the undisputed portion. Id. To the extent that "[a]ny disputed items [related to payment are] not resolved [on mutual agreement of the parties] within 60 days," however, the dispute "must immediately be submitted to arbitration." Id. The Agreement also provides that "any other unresolved disputes ... must be submitted to arbitration." Id. Once in arbitration, the Agreement directs that the arbitration panel

> must interpret [the] Agreement as an honorable engagement and
> not merely a legal obligation[,] ...[t]hey are relieved of
> all judicial formalities[,] ... [t]hey may abstain from
> following the strict rules of law ... [and] [t]hey must make
> their award to effect the general purpose of [the] Agreement
> in a reasonable manner. Id. at 8.

The Agreement further states that the "arbitrators must make their decision within 60 days following the termination of the hearing" and that "[t]he majority decision of any two arbitrators" of the three-arbitrator panel "will be final and binding" on the parties. Id. at 9. Finally, the Agreement instructs that the panel's "decision" must be "based upon a hearing in which evidence may be

introduced without following strict rules of evidence, but in which cross-examination and rebuttal must be allowed." Id.

On August 21, 2009, National Union initiated arbitration proceedings against On Time to collect $972,109 in funds it alleges it is owed under the Payment Agreement. See Chung Aff. Ex. B ("Demand for Arbitration"). Attached to National Union's Demand for Arbitration was a document produced by American International Group, Inc. ("AIG") on behalf of National Union, which purported to show that, as of April 4, 2009, On Time owed National Union premium payments in the above-stated amount. Id. at 3-5; see also Chung Aff. Ex. I (document produced by Chartis, a division of AIG, showing that, as of July 1, 2010, On Time owed National Union $312,188 in premium payments). The Demand for Arbitration also stated that National Union "further seeks an award of security." Id. at 2.

On Time subsequently filed a petition to stay the arbitration in New York Supreme Court, an action which the parties voluntarily dismissed on February 5, 2010. See Respondent's Memorandum of Law in Opposition to Petitioners' Motion to Vacate An Interim Arbitration Award Dated December 17, 2010 ("Resp. Mem.") at 3. On August 5, 2010, after the arbitration had been re-initiated, National Union filed a motion for pre-hearing security with the arbitration panel (the "Panel"), alleging that

3

because On Time was in default on its payment obligations and never disputed National Union's payment invoice with "written particulars," On Time was thereby required under the Payment Agreement to provide National Union with additional collateral. Chung Aff. Ex. C. On August 31, 2010, the Panel issued an Interim Order requesting additional "information from [On Time] as to their financial condition before we rule" on National Union's request. See Declaration of Evan L. Smoak, dated January 11, 2011 ("Smoak Decl.") at ¶ 6. In response, On Time filed its financial statements for the fiscal years 2008 and 2009 with the Panel. Resp. Mem. at 3.

Prior to oral argument, initially scheduled for September 29, 2010, National Union submitted an affidavit from a National Union official, John Lledo, detailing his concerns with On Time's financial ability to satisfy an award, based on his review of On Time's 2008 and 2009 financial statements. See Chung Aff. Ex. K ("Lledo Affidavit") ¶ 7. In particular, the Lledo Affidavit noted: (1) that On Time had experienced an 18.2% drop in revenues between 2008 and 2009, (2) that if On Time had not benefited from an "unexplained ... 90% decrease in workers compensation insurance expense ... [it] would have operated at a $2 million loss in 2009," and (3) that On Time was overly dependent on a single client for 59% of its revenues and relied almost entirely on its

4

line of credit for liquidity support. Id. ¶¶ 9-11. In response to the Lledo Affidavit, On Time submitted an affidavit from On Time's Chief Financial Officer, Donald Sullivan, which sought to establish that On Time was sufficiently secure in its finances to "meet ultimate awards without having security imposed." See Chung Aff. Ex. N ("Sullivan Affidavit").

After hearing oral argument on the motion on October 11, 2010, the arbitration panel issued a unanimous Order, dated October 14, 2010, requiring On Time to post security in the amount of $312,188 within 45 days of the Order. See Chung Aff. Ex. D ("October 14 Order"). The Order further required the parties to "meet and confer in good faith to attempt to resolve the outstanding issues between the Parties" within 30 days of the Order, and to submit a joint status report to the Panel detailing the results of the parties' settlement negotiations. Id. ¶ 4. The Panel expressly reserved its right to take "any appropriate action" after its receipt of the parties' joint status report. Id. The Order was not accompanied by reasoning of any kind. See id.

On November 28, 2010, the day before the deadline for On Time to post pre-hearing security, On Time filed a motion to vacate the Panel's October 14 Order. See Chung Aff. Ex. E. In support, On Time alleged that the Panel was not authorized to

5

award pre-hearing security under the Payment Agreement, that On Time had been denied a full and fair hearing with respect to the issue of pre-hearing security, and that On Time was sufficiently secure in its finances to satisfy the terms of any award issued against it. Id. On Time accompanied its motion with an expert report from an independent actuary, Robert Walling of Pinnacle Actuarial Resources, which estimated that a "reasonable estimate" of On Time's unpaid liabilities to National Union was only $87,290. See id. at Ex. P ("Walling Report"). National Union responded by submitting an affidavit from another independent actuary, Glenn Scharf of Chartis, Inc., which identified perceived shortcomings in the Walling Report. See id. Ex. Q ("Scharf Affidavit").

On December 17, the Panel issued an amended Order -- this time by a majority rather than unanimous vote -- denying On Time's motion to vacate the October 14 pre-hearing security award. See id. Ex. A ("December 17 Order"). The December 17 Order specified that On Time must post the $312,188 in security within 10 days of the Order, and that "[i]f security is not posted within [this timeframe] interest shall accrue on set amount of 9%, the legal rate of interest in New York." See id. ¶ 1. The Order further directed National Union to provide a statement to the Panel outlining "all outstanding workers compensation claims" and "all

6

monies held ... on behalf of [On Time]" within 30 days of On Time's posting of pre-hearing security. Id. ¶ 4. Finally, the Panel expressly "reserve[d] the right to return the Security ... or take any other appropriate action." Id. ¶ 5. Again, the Order was not accompanied by reasoning of any kind. See id.

On December 21, 2010, arbitrator Michael Rogers issued a one-page written opinion explaining his dissent from the Panel's December 17 Order. See Chung Aff. Ex. S ("Rogers Dissent"). In that dissent, arbitrator Rogers stated that the Panel's intent in issuing its October 14 Order "was to encourage the parties to resolve this matter and was the reason why I joined in the order." Id. Arbitrator Rogers further argued that On Time was denied a "fair and full hearing" by the Panel in that the Order "simply accepts one side's version of the merits of the case ... prior to the completion of discovery, without the parties having conducted any depositions, and without ... cross-examination of witnesses." Id.

On Time again chose not to post pre-hearing security. Instead, based on the foregoing, On Time filed the instant petition to vacate the Panel's December 17 Order. In support of its petition, On Time alleged, first, that the award of pre-hearing security was outside the scope of the arbitrator's powers, thus violating § 10(a)(4) of the Federal Arbitration Act ("FAA"),

7

and second, that the Panel's failure to conduct a full evidentiary hearing prior to issuing the award constitutes "misconduct" under FAA § 10(a)(3).

The Court turns first to On Time's contention that the arbitrators "exceeded their powers," in violation of FAA § 10(a)(4). In determining whether to vacate an arbitration award on this basis, a court "must determine whether the arbitrators acted within the scope of their authority [as elucidated in the parties' agreement to arbitrate their dispute] or whether the arbitral award is merely the arbitrators' own brand of justice." Banco de Seguros del Estado v. Mutual Marine Office, Inc., 344 F.3d 255, 262 (2d Cir. 2003); see United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 597 (1960) (holding that arbitrators derive their authority from the scope of the arbitration agreement). To guide this inquiry, the Second Circuit in Banco de Seguros distinguished between "broad" and "narrow" arbitration clauses, holding that "[w]here an arbitration clause is broad ... arbitrators have the discretion to order remedies they determine appropriate." 344 F.3d at 262. The Court found the arbitration clause in that case to be broad, because it

> ... provided that any dispute must be referred to arbitration ... that [t]he arbitrators shall consider this [Agreement] an honourable engagement rather than merely a legal obligation ..., [the arbitrators] are relieved of all judicial

8

> formalities and may abstain from following the strict rules of law ... [and] that [t]he decision ... of any two arbitrators ... shall be final and binding on both parties. <u>Id.</u> at 258 (internal citations omitted).

Based on this finding, the <u>Banco de Seguros</u> Court upheld an arbitration panel's award of pre-hearing security, even though the panel was not expressly authorized by the parties' arbitration agreement to issue such an award. <u>Id.</u> at 262 (reasoning that "[i]t is not the role of the courts to undermine the comprehensive grant of authority to arbitrators by prohibiting an arbitral security award that ensures a meaningful final award.").

Here, the Payment Agreement's arbitration clause contains much of the same general language that the Second Circuit in <u>Banco de Seguros</u> read as indicative of a broad grant of authority to the arbitration panel. <u>See</u> Payment Agreement at 8-9 (granting the panel authority to resolve "any ... dispute arising out of this Agreement," directing that the panel is "relieved of all judicial formalities" and stating that the panel's decisions are "final and binding"). On Time contends, however, that the Panel exceeded its authority by awarding pre-hearing security without abiding by the Payment Agreement's additional language requiring the arbitrators to render "their decision ... based upon a hearing in which evidence may be introduced ... [and] in which cross-examination and rebuttal must be allowed," <u>id.</u> at 9. This language, On Time

9

argues, "necessarily precludes ... *any* award" prior to "a full hearing." Reply Memorandum of Law in Further Support of Petitioners On Time Staffing, LLC and On Time Industrial Staffing, Inc.'s Motion to Vacate an Interim Arbitration Award Dated December 17, 2010 at 3. The Court concludes, however, that the Payment Agreement's use of the word "decision" refers to a final decision on the merits. Notably, the word is phrased in the singular, rather than plural. Moreover, the Payment Agreement also includes a provision stating that "[t]he arbitrators must make their decision within 60 days following the termination of the hearing," which again suggests that the Payment Agreement's use of the word "decision" refers to the Panel's issuance of a final award on the merits. See Payment Agreement at 9.

Prior to the rendering of its final decision, the Panel, in the absence of language in the arbitration agreement expressly to the contrary, possesses the inherent authority to preserve the integrity of the arbitration process to which the parties have agreed by, if warranted, requiring the posting of pre-hearing security. See British Ins. Co. of Cayman v. Water Street Ins. Co., 93 F. Supp. 2d 506, 516 (S.D.N.Y. 2000) (affirming "the principle that arbitrators operating pursuant to [the FAA] have the authority to order interim relief in order to prevent their final award from becoming meaningless"); Pacific Reinsurance Mgmt.

Corp., v. Ohio Reinsurance Corp., 935 F.2d 1019, 1022-23 (9th Cir. 1991) (same). Otherwise, an arbitration panel with a well-founded concern that a party was financially unable to satisfy an eventual award would have no recourse to protect itself against the risk that its significant expenditures of time and effort would be for naught. Accordingly, the Court rejects On Time's claim that requiring the posting of pre-hearing security was outside the scope of the Panel's powers.

The Court also rejects On Time's contention that the Panel committed "misconduct" under FAA § 10(a)(3) by ordering the posting of pre-hearing security without first conducting a full evidentiary hearing. Section 10(a)(3) of the FAA authorizes courts to vacate arbitration awards "[w]here the arbitrators were guilty of misconduct in ... [engaging in] any misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). The Second Circuit has stated, however, that "an arbitrator need not follow all the niceties observed by the federal courts" in order to comply with FAA § 10(a)(3), but must merely "grant the parties a fundamentally fair hearing." Bell Aerospace Co. v. Local 516, 500 F.2d 921, 923 (2d Cir. 1974).

On Time can point to no case in which a court vacated an order directing the posting of pre-hearing security on the basis that the objecting party had been denied a full evidentiary

11

hearing. By contrast, in analogous circumstances to those present here, the Second Circuit in Banco de Seguros held that a pre-hearing security order was consistent with FAA § 10(a)(3). 344 F.3d at 259 (rejecting Banco's claim that the arbitration panel committed misconduct under FAA § 10(a)(3) because it did not have "an opportunity to engage in discovery and to present [it's] evidence at a hearing"). In this case, it is apparent from the record that On Time had ample opportunity to oppose the motion for pre-hearing security, and did, in fact, vigorously oppose it. Indeed, the record before the Panel when it issued its December 17 Order -- comprised of, inter alia, the Walling Report and the Scharf Affidavit contesting the merits of the dispute, unrebutted documentary evidence from National Union showing that On Time owed it $312,188 in premium payments, and the Lledo and Smalling Affidavits contesting On Time's relative ability to satisfy a final award -- would be a more than sufficient basis on which a federal court itself could issue an award of pre-hearing security. Accordingly, it would be incongruous for an arbitration panel to be adjudged to have committed "misconduct" under FAA § 10(a)(3) for determining a question of preliminary relief on this ample record, especially given that the applicable arbitration agreement expressly "relieve[s] [the Panel] of all judicial formalities" and

states that it "may abstain from following the strict rule of law." See Payment Agreement at 9.

Finally, the Court rejects On Time's allegation that the Panel's order requiring the posting of pre-hearing security constitutes "misconduct" under FAA § 10(a)(3) because it was "plainly" motivated by the Panel's "desire to force [On Time] to settlement." Memorandum of Law in Support of Petitioners On Time Staffing, LLC and On Time Industrial Staffing, Inc.'s Motion to Vacate an Interim Arbitration Award Dated December 17, 2010 at 7. While the Panel did accompany its initial October 14 Order for pre-hearing security with a direction that the parties must "meet and confer in good faith to attempt to resolve the outstanding issues between the Parties," and expressly reserved its right to take "any appropriate action" after these negotiations took place, see October 14 Order ¶ 4, these facts, even when coupled with arbitrator Roger's dissenting statement, are not sufficient to establish that the Panel's motivation was to "force" On Time to settle its claims. Cf. Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993) (noting a petitioner's "heavy burden of proof" for vacatur of an arbitration award); Landy Michaels Realty Corp. v. Local 32B-32J, Servo Employees Int'l Union, 954 F.2d 794, 797 (2d Cir. 1992) (stating that awards must be confirmed if there is a "barely colorable justification for the

13

outcome reached"). Concededly, the Court is handicapped in divining the Panel's intent, as the Panel -- as was its prerogative -- did not supply any reasons for its Orders. See Sobel v. Hertz, Warner & Co., 469 F.2d 1211, 1214 (2d Cir.1972) ("there is no general requirement that arbitrators explain the reasons for their award"). But if the desire to force On Time into settlement were the sole or primary reason for the Panel's Orders, On Time cannot explain why a majority of the Panel persisted in requiring On Time to post pre-hearing security after the initial settlement negotiations had failed, or why, in its December 17 Order, the Panel did not renew its original mandate that the parties engage in settlement discussions.

For the foregoing reasons, the Court reaffirms its Order dated February 10, 2010 denying On Time's petition in its entirety, and directs the Clerk of the Court to enter final judgment in respondent's favor.

SO ORDERED.

JED S. RAKOFF, U.S.D.J

Dated: New York, NY
       May 11, 2011